1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10  JOHN CALVIN LACEY, JR.,

11              Petitioner,              No.  2:11-cv-2167 EFB P

12       vs.

13  MATTHEW CATE,

14              Respondent.            <u>ORDER</u>

15  _____/

16       Petitioner is a state prisoner without counsel proceeding with an application for a writ of

17  habeas corpus pursuant to 28 U.S.C. § 2254.  The parties in this action have consented to

18  proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  Petitioner

19  challenges a 2008 judgment of conviction entered against him in the Placer County Superior

20  Court on charges of passing a fictitious bill with the intent to defraud, with enhancements for

21  having suffered a prior strike conviction and for having served four prior prison terms.  He seeks

22  relief on the grounds that: (1) he was denied due process and the effective assistance of counsel

23  when evidence of his inadmissible confession was introduced at his trial; (2) the prosecutor

24  committed misconduct; (3) the trial court violated his right to due process when it admitted

25  opinion testimony regarding his state of mind; (4) the trial court violated his right to due process

26  by permitting the prosecution to present evidence of "subsequent uncharged acts; and (5) he was

denied due process as a result of the cumulative impact of the errors at his trial.  Upon careful consideration of the record and the applicable law, the petitioner's application for habeas corpus relief must be denied.

## I.  Factual and Procedural Background[1]

> A jury convicted defendant John Calvin Lacey, Jr., of passing a fictitious or altered bill with the intent to defraud.  (Pen. Code, § 476.)  In a bifurcated proceeding, the trial court found that defendant had two strikes (*id.*, §§ 667, subds. (b)-(I), 1170.12, subds. (a)-(d)) and four prior prison terms (*id.*, § 667.5, subd. (b)).

> After granting defendant's motion to strike one strike, the trial court sentenced defendant to a total term of 10 years in state prison.

> On appeal defendant contends: (1) he was deprived of due process and the effective assistance of counsel when inadmissible evidence of his confession came in without objection; (2) the prosecutor committed prejudicial misconduct by eliciting the evidence; (3) the trial court improperly admitted opinion testimony about defendant's state of mind; (4) the trial court improperly admitted evidence of subsequent uncharged acts; and (5) the cumulative impact of these errors compels reversal.  Disagreeing with all of these contentions, we shall affirm the judgment.

> FACTUAL BACKGROUND

> In the early morning hours of December 18, 2006, at Thunder Valley Casino, defendant gave blackjack dealer Don Rivard four $100 bills to buy chips.  After putting the bills in the table's "drop box," Rivard dealt a hand, which defendant played without winning or losing anything.  He then gave Rivard four more $100 bills for chips.

> Thinking it unusual for a player who still has all his original chips to buy more, Rivard checked the last two digits of the serial numbers on two of the bills; they were the same.  Rivard discreetly called his floor supervisor over and suggested she inspect the bills.  Security was also summoned, and several officers escorted defendant out.

> Before defendant left, the casino's graveyard-shift security supervisor, Mark Tabios, told him the bills were suspected of

[1]  In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary.

2

being counterfeit and asked where he had gotten them.  Defendant, seeming apologetic, said he might have gotten them from a check-cashing place in Stockton.  Tabios gave him a receipt and said that if the bills turned out to be legitimate, the casino would call him and he could pick up his money.

When all of defendant's bills were inspected, all eight turned out to have the same serial number.  According to Antonio Espinoza, a special agent with the California Department of Justice, Bureau of Gambling Control, their watermarks and security strips proved that the bills were $5 notes which had been washed out and overprinted to counterfeit $100 notes.

On February 22, 2007, Agent Espinoza, accompanied by Bureau of Gambling Control Special Agent Supervisor Aaron Wong, interviewed defendant at a restaurant in Modesto.  Defendant now claimed the bills came from a $1,000 cash payment from "Joe" for driving a truck from the Los Angeles area to Sacramento.  He also said that the casino had never called him to tell him the money was legitimate, although he had called the day after the incident to ask about it.

During the interview, Agent Espinoza asked to see defendant's driver's license.  As defendant took it out of his pocket, a $5 bill came out with it; he put it back in his pocket.  When Espinoza asked to see the bill, defendant said at first he did not have any money with him.  But after Espinoza said he had already seen the bill, defendant gave it to him.  Espinoza observed that it lacked a watermark and a security strip, which are found on all United States currency except $1 bills.  Defendant claimed he had gotten it as change at a gas station.[2]

Defendant did not testify.  He called blackjack dealer Rivard, who testified that defendant had shown him identification to support an application for a "player's card."  Defendant also called security supervisor Tabios, who testified that he had been told by another security supervisor that a Black male seated in the pit had given defendant money earlier.  (However, when security asked to see this person's money, it proved to be legitimate.)

Resp.'s Lodg. Doc. 4 at 1-4.

/////

---

[2]  The People did not put on witnesses to testify about defendant's subsequent arrest and statements in custody, which were ruled inadmissible in limine except for impeachment.  Defendant asserts, however, that Agent Espinoza told the jury defendant had confessed and that the prosecutor deliberately elicited this testimony.  We discuss this subject further in parts I and II of the Discussion.

1    **II.      Analysis**

2         **A.  Standards for a Writ of Habeas Corpus**

3         An application for a writ of habeas corpus by a person in custody under a judgment of a

4    state court can be granted only for violations of the Constitution or laws of the United States.  28

5    U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

6    application of state law.  *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010);

7    *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir.

8    2000).

9         Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

10   corpus relief:

11             An application for a writ of habeas corpus on behalf of a
              person in custody pursuant to the judgment of a State court shall
12             not be granted with respect to any claim that was adjudicated on
              the merits in State court proceedings unless the adjudication of the
13             claim -

14             (1) resulted in a decision that was contrary to, or involved
              an unreasonable application of, clearly established Federal law, as
15             determined by the Supreme Court of the United States; or

16             (2) resulted in a decision that was based on an unreasonable
              determination of the facts in light of the evidence presented in the
17             State court proceeding.

18        For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

19   holdings of the United States Supreme Court at the time of the state court decision.  *Stanley v.*

20   *Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (*citing Williams v. Taylor*, 529 U.S. 362, 405-06

21   (2000)).  Nonetheless, "circuit court precedent may be persuasive in determining what law is

22   clearly established and whether a state court applied that law unreasonably."  *Stanley*, 633 F.3d

23   at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).

24        A state court decision is "contrary to" clearly established federal law if it applies a rule

25   contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

26   precedent on "materially indistinguishable" facts.  *Price v. Vincent*, 538 U.S. 634, 640 (2003).

4

1   Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant

2   the writ if the state court identifies the correct governing legal principle from the Supreme

3   Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[3]

4   *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360

5   F.3d 997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ

6   simply because that court concludes in its independent judgment that the relevant state-court

7   decision applied clearly established federal law erroneously or incorrectly.  Rather, that

8   application must also be unreasonable." *Williams*, 529 U.S. at 412.  *See also Schriro v.*

9   *Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal

10  habeas court, in its independent review of the legal question, is left with a 'firm conviction' that

11  the state court was 'erroneous.'").  "A state court's determination that a claim lacks merit

12  precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness

13  of the state court's decision." *Harrington v. Richter*, 562 U.S.___,___,131 S. Ct. 770, 786

14  (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a

15  condition for obtaining habeas corpus from a federal court, a state prisoner must show that the

16  state court's ruling on the claim being presented in federal court was so lacking in justification

17  that there was an error well understood and comprehended in existing law beyond any possibility

18  for fairminded disagreement." *Harrington*,131 S. Ct. at 786-87.

19      If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

20  court must conduct a de novo review of a habeas petitioner's claims.  *Delgadillo v. Woodford*,

21  527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

22  (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

23  ////

---

24

25      [3]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be
    overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
    presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*,

26  384 F.3d 628, 638 (9th Cir. 2004)).

§ 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 131 S. Ct. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id*. at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Harrington*, 131 S. Ct. at 784.

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

////
////
////
////

1    habeas court must review the claim de novo.  *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462

2    F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook,* 333 F.3d 1052, 1056 (9th Cir. 2003).[4]

3        **B. Petitioner's Claims**

4            **1.  Admission into Evidence of Petitioner's Confession**

5            In his first ground for relief, petitioner claims that he was denied due process and the

6    effective assistance of counsel when evidence of his inadmissible confession was introduced at

7    his trial.  He argues that his trial counsel rendered ineffective assistance in failing to object to

8    this evidence, and particularly in failing to request a jury admonition and/or a mistrial.  Dckt. 1

9    (Pet.) at 8.

10           The California Court of Appeal rejected these arguments in the last reasoned state court

11   decision on this claim.  The court ruled as follows:

12                  Defendant contends he was denied due process and the effective
                    assistance of counsel because trial counsel did not object and
13                  request an admonition to the jury or demand a mistrial after Agent
                    Espinoza revealed that defendant had confessed in custody – a
14                  confession which had been excluded from evidence in limine.  We
                    are not persuaded.
15
                    Even if the jury might have understood Agent Espinoza's
16                  testimony, at the moment he gave it, to mean that defendant had
                    confessed, defendant cannot show grounds for reversal.  The
17                  prosecutor immediately clarified the point he was really trying to
                    elicit from Espinoza.  To dispel any possible confusion on the
18                  issue, the prosecutor told the jury in closing argument that
                    defendant had never confessed.  Defense counsel had a reasonable
19                  tactical purpose, which he explained on the record, for not
                    objecting to Espinoza's testimony or demanding a mistrial.
20                  Finally, any error was harmless by any standard because the
                    evidence of defendant's guilt was overwhelming.
21

22   /////

23   /////

24   _____

25        [4]  The United States Supreme Court has recently granted certiorari in a case apparently to
     consider this issue.  *See Williams v. Cavazos*, 646 F.3d 626, 639-41 (9th Cir. 2011), *cert. granted*
26   *in part*, ___U.S.___, 132 S. Ct. 1088 (2012).

**Background**

Defendant moved in limine to suppress his statements in custody on *Miranda*[5] grounds. At an Evidence Code section 402 hearing on the motion, parole agent Michael Brodie and Special Agent Supervisor Wong testified that once Agent Espinoza finished interviewing defendant, he was taken into custody on a parole violation; thereafter, in response to questioning and without ever receiving *Miranda* advisements, he admitted first to Brodie and then to Wong that he knew the money was counterfeit before taking it to the casino.

The prosecutor conceded the *Miranda* violation. The trial court ruled the statements inadmissible in the People's case-in-chief.

When Agent Espinoza testified at trial, the prosecutor asked whether anyone had accompanied him to the restaurant. He initially answered: "Yes, sir. Parole from the Stanislaus County." On counsel's joint motion, the trial court ordered the answer stricken and directed the jury to disregard it.

Later, the prosecutor questioned Agent Espinoza about his written report of the interview. The colloquy began [italics added]:

"Q. You prepared a report regarding your conversation with [defendant]?

"A. Yes, I did.

"Q. And page 75, Counsel. I would ask you to refer to your report, please, the top paragraph, I guess it's number 10 that was just continued on page 75, the third full sentence of that.

"A. Report number what?

"Q. Report number 8.

"A. The second page?

"Q. The second page. Actually it's got the number 3 on the bottom of it.

"A. Number 3. Okay.

"Q. I think the sentence begins with all in capitals, [defendant].

"A. Is that paragraph Number 11?

---

[5]  *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694].

"Q. Actually it's the paragraph above that.

"A. It starts off, *he said he told me the money was not real.* [Defendant] said he was escorted –

"Q. *Stop.  Okay.  That's correct.  What I am asking you to look at though is the third complete sentence.  Let me show you what I am looking for.  That is it right there.*

"A. *Would you like me to read it?*

"Q. *Read it to yourself, please.*

"A. *Okay.*

"Q. *Does that sentence refresh your recollection as to whether [defendant ] actually called the casino about his money?*

"A. *Yes.*

"Q. And does that refresh your recollection as to when he did make that call?

"A. Yes, sir.

"Q. When did [defendant] call the casino about his money?

"A. He said he called the following day."

Defense counsel did not object to the statement "[H]e said he told me the money was not real" or expressly address it in cross-examining Agent Espinoza.

Outside the jury's presence, defendant complained to the trial court about counsel's failure to object.  The court replied: "Some of that is trial tactics . . . .  Sometimes the attorney doesn't want to call attention to things that are done during the course of the trial.  To call attention to it would essentially reinforce to the jury that there is something that doesn't want to get heard.  I mean I heard it too and – but I am not exactly sure that that was – I don't think what came out was actually very harmful because [the prosecutor] stopped him before he got to it."

In closing argument, the prosecutor said: "So what evidence supports the idea that [defendant] knew these items were fraudulent and intended to defraud the casino?  Well, we have what [defendant] told you, his statements.  *Now he never says once that ['] I knew these were fraudulent, I intended to defraud.[']  He never said that.*"  (Italics added.)  His incriminating "statements" were the conflicting stories he had told casino security supervisor

Tabios and Agent Espinoza about the counterfeit bills, from which the jury could infer guilty knowledge.

At sentencing, defendant requested a *Marsden*[6] hearing, asserting that defense counsel did not have defendant's "best interest at heart" because counsel had allowed the prosecutor "to use erroneous evidence against me with malice" and had not filed defendant's pro se motion for mistrial.  The trial court granted the requested hearing.

In the *Marsden* hearing, defendant repeated his complaint that counsel had not objected when Agent Espinoza testified defendant was aware the money was counterfeit, even though this evidence had been excluded before trial.  Defendant also complained that counsel had not objected to Espinoza's reference to the parole agent.[7]

In response, counsel noted that the trial court had granted a defense motion in limine to exclude any reference to the parole agent's identity, and when a witness mentioned it anyway, the prosecutor stopped him.  Counsel did not object or ask for a mistrial for two reasons: He did not want to focus the jury's attention on the point, and he did not want a mistrial because the ruling excluding defendant's confession would not be binding on retrial and a renewed motion to exclude the confession might not be granted.

As to the supposed testimony about defendant's confession, counsel asserted it was not really about that at all.  The trial transcript (which counsel had just obtained, though he had requested it long before) showed that the prosecutor was asking about the following statement in Agent Espinoza's report: "'[Defendant] said he called the casino the following day and was told they had not determined if the money was real or not.'" However, Agent Espinoza apparently began reading from a different spot, which was rendered even more confusing because the first part of that paragraph was missing.  Thus, the statement which Espinoza quoted – "'He told me the money was not real'" – was probably a paraphrase of what defendant said someone at the casino had told him.

Counsel acknowledged that, at the moment Agent Espinoza gave this testimony, it sounded like an admission by defendant. However, the prosecutor immediately stopped the agent before

---

[6] *People v. Marsden* (1970) 2 Cal.3d 118.

[7] Actually, as we have noted, defense counsel joined the prosecutor's motion to strike this reference, though in the *Marsden* hearing counsel apparently forgot he had done so. Defendant does not renew this point on appeal.

counsel had a chance to object, and later told the jury that defendant had never said he knew the money was counterfeit.

Counsel believed he could not have filed a new trial motion based on this episode without the trial transcript.  In addition, he did not want to have to decide whether to file a new trial motion before the trial court had dealt with his *Romero*[8] motion, because if that succeeded he would not want to move for a new trial.[9]

The trial court explained to defendant that counsel's last remarks meant he thought he had a better chance with his *Romero* motion before this judge than he might before some other judge on retrial, but if he brought the new trial motion first, the *Romero* motion would become irrelevant.  The court then denied defendant's *Marsden* motion.

**Analysis**

To win reversal for ineffective assistance of counsel, a defendant must show that trial counsel performed incompetently and that a better result was reasonably likely absent counsel's incompetence.  (*People v. Maury* (2003) 30 Cal.4th 342, 389 (*Maury*).)  Furthermore, ineffective assistance cannot be shown on appeal where counsel had a tactical reason for his actions, unless that reason is patently incorrect.  (*People v. Jones* (2003) 29 Cal.4th 1229, 1254.)  The failure to object is seldom ineffective assistance of counsel.  (*Maury, supra*, 30 Cal.4th at p. 419.)

As trial counsel explained in part, he had clear tactical reasons for not objecting to Agent Espinoza's testimony, demanding an admonition of the jury, or moving for mistrial.  The prosecutor intervened and redirected the witness's testimony before counsel could object, even had he wanted to do so; the prosecutor also stated in closing argument that there was no evidence of a confession before the jury.  Furthermore, counsel could also reasonably have feared as to this evidence, as he said he did with respect to the "parole" testimony, and as the trial court pointed out to defendant during trial, that an objection would call the jury's attention to the testimony.

Lastly, defendant was extremely unlikely to have obtained an acquittal or a hung jury on retrial, because the admissible evidence overwhelmingly established his guilt.  He brought eight counterfeit bills to a casino.  He tendered the second batch for chips when he

---

[8]  *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

[9]  In other words, counsel assessed the likelihood of winning a better result on retrial as far lower than that of winning on the *Romero* motion before the present judge.  As we shall explain, this assessment was reasonable.

still had all his chips in front of him (in other words, trying to pass all the bills undetected as quickly as possible). He told conflicting stories about when and how he got the bills. And when interviewed about the crime, he clumsily tried to conceal yet another counterfeit bill and to deny he had it, then claimed to have acquired it unwittingly, like the others.[10] Based on this evidence, defendant's claim that he was an innocent victim lacked credibility. Counsel sensibly concluded that *Romero* relief held more promise of minimizing defendant's punishment than did retrial.

In his opening brief, defendant asserts as fact that Agent Espinoza's testimony referred to defendant's excluded confession, failing to mention the alternative explanation given at the *Marsden* hearing. Defendant also fails to mention the prosecutor's immediate and subsequent actions to correct any misimpression the jury might have formed from the testimony.[11] Relying on *People v. Neal* (2003) 31 Cal.4th 63, 86, defendant asserts that the trial court would have been required to grant a mistrial on defense request because a confession operates as an "'"evidentiary bombshell which shatters the defense."'" *Neal* is distinguishable. There, the jury heard two full taped confessions by the defendant in his own voice. (*Id.* at pp. 74-77.) Here, the jury heard only a few equivocal words by a testifying officer, from which the prosecutor took immediate steps to divert and redirect the jury's attention. Even if those measures were not enough by themselves, the prosecutor's subsequent closing argument, which expressly told the jury there was no confession, should have been sufficient to cure any harm.

But the bigger problem with defendant's argument is that he fails to explain how a mistrial would have benefitted him. For all the reasons we have already given, the admissible evidence made it extremely unlikely that he would have obtained a more favorable outcome on retrial.

////

////

////

---

[10]  In part IV of the Discussion we conclude, contrary to defendant's argument, that this evidence was properly admitted.

[11]  In his reply brief defendant dismisses this alternative explanation as speculative and the prosecutor's actions as insufficient. However, it was defendant's responsibility to address these points in his opening brief. Because he did not do so, we do not consider his belated arguments in the reply brief. (*Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8.)

1
2
3
4

> Finally, defendant asserts that trial counsel's reasoning was
> "specious" in part because the *Miranda* violation was so clear that
> defendant's confession would never have been admitted on retrial.
> We need not decide this point because, for the reasons already
> stated, there is no reasonable probability of a different result on
> retrial.  Therefore, defendant cannot show ineffective assistance of
> counsel.  (*Maury, supra*, 30 Cal.4th at p. 389.)

5  Resp.'s Lodg. Doc. 4 at 4-13.

6        To support a claim of ineffective assistance of counsel, a petitioner must first show that,

7  considering all the circumstances, counsel's performance fell below an objective standard of

8  reasonableness.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  After a petitioner

9  identifies the acts or omissions that are alleged not to have been the result of reasonable

10  professional judgment, the court must determine whether, in light of all the circumstances, the

11  identified acts or omissions were outside the wide range of professionally competent assistance.

12  *Id*. at 690; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).  "Counsel's errors must be 'so serious as

13  to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 131 S.Ct. at 787-

14  88. (quoting *Strickland*, 466 U.S. at 687).  Surmounting the bar imposed by *Strickland* was

15  "never an easy task," and "establishing that a state court's application of *Strickland* was

16  unreasonable under § 2254(d) is all the more difficult."  *Id.* at 788.

17        Second, a petitioner must establish that he was prejudiced by counsel's deficient

18  performance.  *Strickland*, 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable

19  probability that, but for counsel's unprofessional errors, the result of the proceeding would have

20  been different."  *Id*. at 694.  A reasonable probability is "a probability sufficient to undermine

21  confidence in the outcome."  *Id.* "The likelihood of a different result must be substantial, not just

22  conceivable."  *Richter*, 131 S.Ct. at 792.

23        This court agrees with the California Court of Appeal that petitioner has failed to

24  demonstrate either deficient performance or prejudice with respect to this claim.  As explained

25  by the state court, petitioner's counsel articulated several reasonable tactical reasons for

26  declining to highlight for the jury the testimony of Agent Espinoza.  Reasonable tactical

decisions, including decisions with regard to the presentation of the case, are "virtually

unchallengeable." *Strickland*, 466 U.S. at 687-90.  Petitioner has failed to overcome the strong

presumption that his trial counsel's actions with respect to the testimony of Agent Espinoza were

the result of reasonable tactical decisions and sound trial strategy.

Petitioner has also failed to demonstrate prejudice with respect to this claim.  As

explained by the California Court of Appeal, the evidence against petitioner was overwhelming.

Further, Agent Espinoza's testimony was far from clear, and any possible harmful inference

arising from his testimony was cured by the prosecutor's statement during his closing argument

that petitioner had never admitted knowing the bills were counterfeit or that he intended to

defraud the casino.  Under these circumstances, there is no reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different.

*Strickland*, 466 U.S. at 694.

The decision of the California Court of Appeal rejecting petitioner's claim of ineffective

assistance of counsel is not contrary to or an unreasonable application of clearly established

federal law.  Accordingly, petitioner is not entitled to relief on this claim.

### 2.  Prosecutorial Misconduct

In his second ground for relief, petitioner claims that "if the error permitting evidence of

the inadmissible confession was such that an admonition to the jury would not have cured the

error, the offending testimony must be deemed the product of prosecutorial misconduct

rendering [petitioner's] trial fundamentally unfair."  Pet. at 8.  The California Court of Appeal

denied this claim, reasoning that:

> as we have already explained,  nothing in the record shows that the
> prosecutor meant to elicit testimony which could have been taken
> to refer to defendant's confession. On the contrary, the record
> makes clear that Agent Espinoza simply misunderstood the
> prosecutor's question, which was directed to a different point in the
> agent's report.  Defendant has failed to show prosecutorial
> misconduct.

Resp.'s Lodg. Doc. 4 at 13-14.

1    A criminal defendant's due process rights are violated when a prosecutor's misconduct

2    renders a trial fundamentally unfair.  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

3    However, a prosecutor's misconduct does not, per se, violate a petitioner's constitutional rights.

4    *Jeffries v. Blodgett,* 5 F.3d 1180, 1191 (9th Cir. 1993) (citing *Darden*, 477 U.S. at 181, and

5    *Campbell v. Kincheloe*, 829 F.2d 1453, 1457 (9th Cir. 1987)).  Claims of prosecutorial

6    misconduct are reviewed "'on the merits, examining the entire proceedings to determine whether

7    the prosecutor's [actions] so infected the trial with unfairness as to make the resulting conviction

8    a denial of due process.'"  *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995) (citation

9    omitted).  *See also Greer v. Miller*, 483 U.S. 756, 765 (1987); *Donnelly v. DeChristoforo*, 416

10   U.S. 637, 643 (1974); *Turner v Calderon*, 281 F.3d 851, 868 (9th Cir. 2002).  Relief on such

11   claims is limited to cases in which the petitioner can establish that prosecutorial misconduct

12   resulted in actual prejudice.  *Johnson*, 63 F.3d at 930 (citing *Brecht*, 507 U.S. at 637-38); *see*

13   *also Darden*, 477 U.S. at 181-83; *Turner*, 281 F.3d at 868.  Put another way, prosecutorial

14   misconduct violates due process when it has a substantial and injurious effect or influence in

15   determining the jury's verdict.  *See Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).

16   Finally, it is the petitioner's burden to state facts that point to a real possibility of constitutional

17   error in this regard.  *See O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990).

18   Under the circumstances of this case, petitioner cannot demonstrate that the prosecutor

19   committed misconduct or that any misconduct by the prosecutor resulted in actual prejudice.  As

20   explained by the California Court of Appeal, there is no evidence the prosecutor intended to

21   elicit the challenged testimony from Agent Espinoza.  Even if he did, and for the reasons set

22   forth in the claim discussed immediately above, petitioner cannot show that the admission of

23   Agent Espinoza's testimony had a substantial and injurious effect in determining the jury's

24   verdict.  Accordingly, petitioner is not entitled to relief on his claim of prosecutorial

25   misconduct.

26   ////

15

### 3.  Erroneous Admission of Evidence

In his third ground for relief, petitioner claims that the trial court violated his right to due process when it admitted opinion testimony regarding his state of mind.  Specifically, petitioner objects to testimony given by the blackjack dealer at the casino that petitioner's behavior was "suspicious."  Pet. at 8.

The California Court of Appeal rejected these arguments, reasoning as follows:

> Defendant contends that the trial court erroneously admitted lay opinion testimony as to defendant's state of mind, over objection. We are not persuaded.
>
> The testimony to which defendant refers is the following, given by blackjack dealer Rivard:  "Well, it's unusual for someone to buy another round of chips, if you will put it that way, after you have already purchased it.  He did not lose the hand, so he had no reason to purchase other chips.  He had plenty of chips to play with.  He was only playing a $25 denomination.  So out of my own personal experience, it's not habitual to buy chips again."  According to defendant, the only relevance of this testimony was to show that defendant's behavior "was somehow suspicious and therefore, criminal."  In other words, defendant construes this testimony as an improper attempt by Rivard to opine on defendant's state of mind. This contention fails because it was not raised below, and lacks merit in any event.
>
> To begin with, defendant's contention is forfeited.  A claim of error in admitting evidence is forfeited on appeal unless an objection was raised below which was "so stated as to make clear the specific ground of the objection."  (Evid.Code, § 353, subd. (a); *People v. Partida* (2005) 37 Cal.4th 428, 433-435.)  Here, the prosecutor asked: "What was unusual to you based upon your training and experience about the fact that [defendant] asked you for another $400 worth of chips?"  Defense counsel said: "Your Honor, I am going to object, relevance and [Evidence Code section] 352 to the extent that the question seeks information about what other people, aside from the defendant, do or do not do." This objection did not raise the theory that the testimony would be inadmissible lay opinion about defendant's state of mind. Therefore, it did not preserve that contention for appeal.

////

////

////

16

1
2
3
4

> In any event, as the context of the testimony shows, defendant's claim that the testimony was relevant only to his state of mind is mistaken.  The testimony was offered to explain why Rivard decided to check the serial numbers of bills in the second batch defendant gave him, although he did not do so with the first batch of bills.  Defendant fails to show that the testimony could not properly be admitted for that purpose.

5    Resp.'s Lodg. Doc. 4 at 14-15.

6          As described above, the California Court of Appeal concluded that petitioner's due

7    process claim was waived because of petitioner's failure to object to the admission of Rivard's

8    testimony on the grounds that it constituted inadmissible lay opinion about petitioner's state of

9    mind.  Respondent argues that the state court's finding of waiver constitutes a state procedural

10   bar precluding this court from addressing the merits of this claim.  Dckt. No. 9 (Answer) at 24-

11   25.

12          State courts may decline to review a claim based on a procedural default.  *Wainwright v.*

13   *Sykes*, 433 U.S. 72 (1977).  As a general rule, a federal habeas court "'will not review a question

14   of federal law decided by a state court if the decision of that court rests on a state law ground that

15   is independent of the federal question and adequate to support the judgment.'"  *Calderon v.*

16   *United States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting *Coleman v.*

17   *Thompson*, 501 U.S. 722, 729 (1991)).  The state rule is only "adequate" if it is "firmly

18   established and regularly followed."  *Id.*  (quoting *Ford v. Georgia*, 498 U.S. 411, 424 (1991));

19   *Bennett v. Mueller*, 322 F 3d 573, 583 (9th Cir. 2003) ("[t]o be deemed adequate, the state law

20   ground for decision must be well-established and consistently applied.")  The state rule must also

21   be "independent" in that it is not "interwoven with the federal law."  *Park v. California*, 202

22   F.3d 1146, 1152 (9th Cir. 2000) (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983)).

23   Even if the state rule is independent and adequate, the claims may be heard if the petitioner can

24   show:  (1) cause for the default and actual prejudice as a result of the alleged violation of federal

25   law; or (2) that failure to consider the claims will result in a fundamental miscarriage of justice.

26   *Coleman*, 501 U.S. at 749-50.

1    Respondent has met his burden of adequately pleading an independent and adequate state

2    procedural ground as an affirmative defense.  *See Bennett*, 322 F.3d at 586.  Petitioner does not

3    deny that his trial counsel did not raise a contemporaneous objection to Rivard's testimony on

4    the grounds that it constituted impermissible lay opinion about his state of mind.  Although the

5    state appellate court addressed petitioner's claim on the merits, it also expressly held that the

6    claim was waived on appeal because of defense counsel's failure to object.  Petitioner has failed

7    to meet his burden of asserting specific factual allegations that demonstrate the inadequacy of

8    California's contemporaneous-objection rule as unclear, inconsistently applied or not

9    well-established, either as a general rule or as applied to him.  *Bennett*  322 F.3d at 586;

10   *Melendez v. Pliler*, 288 F.3d 1120, 1124-26 (9th Cir. 2002).  Petitioner's claim therefore appears

11   to be procedurally barred.  *See Coleman*, 501 U.S. at 747; *Harris v. Reed*, 489 U.S. 255, 264

12   n.10 (1989); *Fairbank v. Ayers*, 650 F.3d 1243, 1246-47 (9th Cir. 2011) ("We have held that

13   California consistently applies its contemporaneous objection rule when a party fails to object to

14   the admission of evidence"); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004).

15   Petitioner has also failed to demonstrate that there was cause for his procedural default or that a

16   miscarriage of justice would result absent review of the claim by this court.  *See Coleman*, 501

17   U.S. at 748; *Vansickel v. White*, 166 F.3d 953, 957-58 (9th Cir. 1999).  However, for the reasons

18   discussed below, even if this claim was not procedurally barred, it lacks merit and should be

19   denied.

20   As explained above, a federal writ of habeas corpus is not available for alleged error in

21   the interpretation or application of state law.  *Wilson*, 131 S. Ct. at 16.  Absent some federal

22   constitutional violation, a violation of state law does not provide a basis for habeas relief.  *Id.*

23   Accordingly, a state court's evidentiary ruling, even if erroneous, is grounds for federal habeas

24   relief only if it renders the state proceedings so fundamentally unfair as to violate due process.

25   ////

26   ////

18

*Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009); *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991) ("The issue for us, always, is whether the state proceedings satisfied due process; the presence or absence of a state law violation is largely beside the point.").

A writ of habeas corpus will be granted for an erroneous admission of evidence "only where the 'testimony is almost entirely unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings.'" *Mancuso v. Olivarez*, 292 F.3d 939, 956 (9th Cir. 2002) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983)). Evidence violates due process only if "there are no permissible inferences the jury may draw from the evidence." *Jammal*, 926 F.2d at 920. Evidence must "be of such quality as necessarily prevents a fair trial." *Id.* (quoting *Kealohapauole v. Shimoda*, 800 F.2d 1463 (9th Cir. 1986)).

Even so, as the Ninth Circuit has observed:

> The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair (citation omitted), it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ

*Holley*, 568 F.3d at 1101. Therefore, "under AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as laid out by the Supreme Court." *Id.* According to these authorities, the state court's rejection of petitioner's due process claim here does not support habeas relief under AEDPA because the admission of Rivard's testimony to explain why he decided to check the serial numbers of petitioner's bills did not violate any clearly established federal law. *Id.* Nor has petitioner demonstrated that the admission of the challenged evidence rendered his trial fundamentally unfair.

////

////

1    The decision of the California Court of Appeal rejecting petitioner's claim of improper

2    admission of evidence is not contrary to or an unreasonable application of federal law, nor is it

3    based on an unreasonable determination of the facts of this case.  Accordingly, petitioner is not

4    entitled to habeas relief.

5    **4.  Evidence of Subsequent Uncharged Acts**

6    Petitioner's next claim is that the trial court violated his right to due process by

7    permitting the prosecution to present evidence of "subsequent uncharged acts."  Pet. at 9.  He

8    explains:  "over defense objection federal agents interviewing petitioner regarding the present

9    offense was [sic] allowed to testify that during the interview, petitioner had in his possession an

10   altered bill.  The only relevance of this was as improper 'other acts evidence,' offered to convict

11   petitioner solely based on his supposed propensity or disposition to commit criminal acts."  *Id.*

12   The California Court of Appeal denied this claim, reasoning as follows:

13           Defendant contends that the trial court violated his due process
             rights by erroneously admitting evidence of subsequent uncharged
14           acts, over objection – i.e., his possession of a counterfeit $5 bill
             when interviewed two months after the alleged crime.  We
15           disagree.

16           Defendant moved in limine to exclude this evidence as
             inadmissible propensity evidence under Evidence Code section
17           1101, subdivision (a), and as unduly prejudicial under Evidence
             Code section 352; counsel also requested that if the evidence were
18           admitted the trial court give a limiting instruction.  The prosecutor
             argued that it was admissible under Evidence Code section 1101,
19           subdivision (b) to establish knowledge, intent, and lack of mistake
             or accident; he joined in the defense request for a limiting
20           instruction.  The trial court denied the motion to exclude the
             evidence, finding it admissible on the grounds stated by the
21           prosecutor and not unduly prejudicial, and agreed to give a
             limiting instruction.

22
             The trial court instructed the jury as to this evidence (CALCRIM
23           No. 375):

24           "The People presented evidence that [ ] defendant committed
             another offense that was not charged in this case.
25
             "You may consider this evidence only if the People have proved
26           by a preponderance of the evidence that [ ] defendant in fact

committed the offense.  Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt.  A fact is proved by [a] preponderance of the evidence if you conclude that it's more likely than not that the fact is true.

"If the People have not met this burden, you must disregard this evidence entirely.

"If you decide that [ ] defendant committed the offense, you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not [ ] defendant acted with the intent to defraud in this case, or [ ] defendant knew that the document was false or altered when he allegedly acted in this case, or [ ] defendant's alleged actions were the result of mistake or accident.

"Don't consider this evidence for any other purpose except those limited purposes of showing [ ] defendant's intent or knowledge or the absence of mistake or accident by [ ] defendant.

"If you conclude that [ ] defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence.  It's not sufficient by itself to prove that [ ] defendant is guilty of the charged offense.  The People must still prove each element of that charge beyond a reasonable doubt."

We review the trial court's decision to admit uncharged acts for abuse of discretion.  (*People v. Lewis* (2001) 25 Cal.4th 610, 637.)  We conclude the court acted within its discretion to admit this evidence.

Defendant asserts the uncharged act was irrelevant to prove knowledge, intent, or the absence of mistake or accident because it occurred after the charged act.  On the contrary: Whether the uncharged act came before or after the charged act is immaterial.  (*People v. Griffin* (1967) 66 Cal.2d 459, 464-465; *People v. Ward* (1968) 266 Cal.App.2d 241, 255.)  Because defendant makes no other argument for the irrelevance of this evidence under Evidence Code section 1101, subdivision (b), and his possession of a counterfeit bill on a later occasion is relevant to whether he knew the bills he possessed at the casino were counterfeit and intended to pass them fraudulently, or was simply the victim of mistake or accident, his challenge fails.

Because the evidence had some tendency in reason to prove a point in dispute (the presence or absence of a guilty state of mind), it was not unduly prejudicial.  Evidence is prejudicial under Evidence Code section 352 only if it inflames a jury emotionally against the defendant without regard to the issues.  (*People v. Crew* (2003) 31 Cal.4th 822, 842.)

> In any event, the trial court's limiting instruction, which we presume the jury followed (*People v. Adcox* (1988) 47 Cal.3d 207, 253) – and which defendant fails to mention – correctly told the jury not to assess this evidence as proof of propensity.

> Under all the circumstances, there was no abuse of discretion in admitting the uncharged act evidence.

Resp.'s Lodg. Doc. 4 at 16-18.

As set forth above, in order to obtain federal habeas relief on his due process claims, petitioner must establish that the decision of the California Court of Appeal was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court authority. 28 U.S.C. § 2254(d). The United States Supreme Court "has never expressly held that it violates due process to admit other crimes evidence for the purpose of showing conduct in conformity therewith, or that it violates due process to admit other crimes evidence for other purposes without an instruction limiting the jury's consideration of the evidence to such purposes." *Garceau v. Woodford*, 275 F.3d 769, 774 (9th Cir. 2001), *overruled on other grounds* by *Woodford v. Garceau*, 538 U.S. 202 (2003). In fact, the Supreme Court has expressly left open this question. *See Estelle*, 502 U.S. at 75 n.5 ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime"). Because the state court's rejection of petitioner's due process claim is not contrary to United States Supreme Court precedent, petitioner is not entitled to federal habeas relief under AEDPA. *See Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008) (holding that state court had not acted contrary to clearly established United States Supreme Court precedent when it determined that the propensity evidence introduced against the defendant did not violate his right to due process); *Larson v. Palmateer*, 515 F.3d 1057, 1066 (9th Cir. 2008) (same); *Alberni v. McDaniel*, 458 F.3d 860, 863-67 (9th Cir. 2006) (denying the petitioner's claim that the introduction of propensity evidence violated his due process rights under the Fourteenth Amendment because "the right [petitioner] asserts has not been clearly established by the

22

Supreme Court, as required by AEDPA"); *United States v. LeMay*, 260 F.3d 1018 (9th Cir.

2001) (Fed. R. Evid. 414, permitting admission of evidence of similar crimes in child

molestation cases, under which the test for balancing probative value and prejudicial effect

remains applicable, does not violate the due process clause).

Nor has petitioner demonstrated that the decision of the California Court of Appeal is

contrary to state or federal law.  As noted above, under Ninth Circuit law the admission of "other

acts" evidence violates due process only if there were no permissible inferences the factfinder

could have drawn from the evidence.  *See McKinney v. Rees*, 993 F.2d 1378, 1381 (9th Cir.

1993) (question is "whether any inferences relevant to a fact of consequence may be drawn from

each piece of the evidence, or whether they lead only to impermissible inferences about the

defendant's character"); *Jammal*, 926 F.2d at 920 ("[e]vidence introduced by the prosecution

will often raise more than one inference, some permissible, some not; we must rely on the jury to

sort them out in light of the court's instructions").  *See also LeMay*, 260 F.3d at 1027 (evidence

of prior similar crimes "will only sometimes violate the constitutional right to a fair trial, if it is

of no relevance, or if its potential for prejudice far outweighs what little relevance it might

have").  Here, the California Court of Appeal made a reasonable determination that the evidence

of petitioner's subsequent possession of a counterfeit bill was relevant to show that petitioner

knew the bills he possessed at the casino were counterfeit and that he intended to pass them

fraudulently, as opposed to being the victim of mistake or accident, as he originally claimed.

This is a permissible inference the jury could draw from this evidence that is not constitutionally

impermissible.

Further, the limiting jury instruction did not compel the jury to draw an inference of

propensity from the introduction of evidence of subsequent uncharged conduct.  The jury was

specifically informed that the other crimes evidence could be considered only for the limited

purpose of showing the existence of intent, knowledge, or the absence of mistake or accident and

could not be considered for any other purpose.  In addition, the jury instructions as a whole

correctly informed petitioner's jury that the prosecution had the burden of proving petitioner

guilty beyond a reasonable doubt.  The jury is presumed to have followed these instructions.

*Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Brown v. Ornoski*, 503 F.3d 1006, 1018 (9th Cir.

2007).  Under these circumstances, any error in admitting evidence of petitioner's later

possession of a counterfeit bill did not have "a substantial and injurious effect or influence in

determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  *See also*

*Penry v. Johnson*, 532 U.S. 782, 793-96 (2001).

In sum, the admission into evidence at petitioner's trial of petitioner's subsequent

possession of a counterfeit bill did not violate any right clearly established by United States

Supreme Court precedent or result in prejudice under the circumstances of this case.

Accordingly, petitioner is not entitled to relief on this claim.

### 5. Cumulative Error

In his final claim for relief, petitioner claims that he was denied due process as a result of

the cumulative impact of the errors at his trial.  Pet. at 9.  The California Court of Appeal denied

this claim, ruling that "since we have found no error, we reject this contention."  Resp.'s Lodg.

Doc. 4 at 19.

The Ninth Circuit has concluded that under clearly established United States Supreme

Court precedent, the combined effect of multiple trial errors may give rise to a due process

violation if it renders a trial fundamentally unfair, even where each error considered individually

would not require reversal.  *Parle v. Runnels*, 505 F.3d 922, 927 (9th. Cir. 2007) (citing

*Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) and *Chambers v. Mississippi*, 410 U.S.

284, 290 (1973)).  *See also Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir. 2011) (if no error of

constitutional magnitude occurred at trial, "no cumulative prejudice is possible").  "The

fundamental question in determining whether the combined effect of trial errors violated a

defendant's due process rights is whether the errors rendered the criminal defense 'far less

////

persuasive,' *Chambers*, 410 U.S. at 294, and thereby had a 'substantial and injurious effect or influence' on the jury's verdict." *Parle*, 505 F.3d at 927 (quoting *Brecht*, 507 U.S. at 637).

This court has addressed each of petitioner's claims raised in the instant petition and has concluded that no error of constitutional magnitude occurred at his trial in state court.  This court also concludes that the alleged errors, even when considered together, did not render petitioner's defense "far less persuasive," nor did they have a "substantial and injurious effect or influence on the jury's verdict."  Accordingly, petitioner is not entitled to relief on his claim of cumulative error.

**III.  Conclusion**

For all of the foregoing reasons, IT IS HEREBY ORDERED that:

1.  Petitioner's application for a writ of habeas corpus is denied;

2.  The court declines to issue a certificate of appealability; and

3.  The Clerk is directed to close the case.

DATED:  March 28, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE